UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUMANIX PUBLISHING, LLC,

               Plaintiff/Counter-Defendant,

                       v.

REGNERY PUBLISHING, INC. and
BETSY McCAUGHEY,

               Defendants/Counterclaimants/
                   Third-Party Plaintiffs,

                       v.

NEWSMAX MEDIA, INC.,

               Third-Party Defendant.

CIVIL ACTION NO. 13 CV 844 (JMF)

**REPLY BRIEF BY DEFENDANTS REGNERY PUBLISHING, INC. AND
BETSY McCAUGHEY IN SUPPORT OF MOTION FOR JUDGMENT ON
THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(c)
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**BAKER & HOSTETLER LLP**
Bruce W. Sanford
Mark I. Bailen
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC  20036
(202) 861-1500
(202) 861-1783 (Facsimile)
bsanford@bakerlaw.com
mbailen@bakerlaw.com

*Attorneys for Defendants Regnery
Publishing, Inc. and Betsy McCaughey*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ................. 3

   A.  Humanix Has Not Alleged and Cannot Adequately Allege a Protectable
       Copyright Interest ...................................................................................... 3

   B.  There Is No Valid Assignment of the Copyright ......................................... 5

   C.  The Agreement Expressly Precludes Further Liability Against McCaughey
       After Termination ....................................................................................... 6

II.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY
    JUDGMENT IN FAVOR OF DEFENDANTS ..................................................... 7

   A.  Humanix Is Equitably Estopped From Pursuing Its Claims ......................... 7

   B.  Humanix Is Not Entitled To Injunctive Relief Because Of Unclean Hands ............. 9

   C.  The Agreement is Void *Ab Initio* or Recission is Proper............................. 10

CONCLUSION ................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts*
   *Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004)........................................................................ 4

*Christopher S. v. Douglaston Club,* 275 A.D.2d 768
   713 N.Y.S.2d 542 (2d Dep't 2000) ...................................................................................... 8

*Cordell v. The McGraw-Hill Cos., Inc.*, No. 12 Civ. 0637 (ALC),
   2012 WL 5264844 (S.D.N.Y. Oct. 23, 2012), *aff'd*, No. 12-4481-cv,
   2013 WL 2096621 (2d Cir. May 16, 2013) (Summary Order)................................................. 2

*Decarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................. 9

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). ............................................................... 6

*New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),*
   266 F.3d 112 (2d Cir. 2001) ................................................................................................ 8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
   85 N.Y.2d 20 (1995). .......................................................................................................... 9

*Papa's-June Music v. McLean*, 921 F. Supp. 1154 (S.D.N.Y. 1996)........................................ 2, 6

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993).............................. 3

**Statutes**

17 U.S.C. § 204(a) ................................................................................................................... 6

17 U.S.C. § 204(b)(1) ............................................................................................................... 6

N.Y. Civil Rights Law §§ 50, 51 .............................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 7(a) ........................................................................................ 4

**Treatises**

Patry on Copyright § 5:106........................................................................................................ 6

Defendants Regnery Publishing, Inc. ("Regnery") and Betsy McCaughey respectfully submit this Reply to the Memorandum of Law in Opposition (the "Opposition") filed by Plaintiff Humanix Publishing, LLC ("Humanix").

## INTRODUCTION

There are one too many books in this lawsuit.  Humanix goes to great lengths to explain its story about a book that does not form the basis of its Complaint.  It explains how it recruited an expert on health care issues, Dr. Betsy McCaughey, to revise, edit and be the "face" of a book that was written by Dan Ruddy, the brother of Humanix's President, Chris Ruddy (the "Ruddy Manuscript").  But Humanix fails to explain, and provides no legal basis for, its claim to the copyright over Dr. McCaughey's separate manuscript – not Dan Ruddy's – which was later published as an e-book (the "E-Book") and in print (the "Regnery Book").

Humanix focuses an array of various legal arguments on the wrong book – the one it tried unsuccessfully to persuade Dr. McCaughey to put her name on.  But it is undisputed and indisputable that when Dr. McCaughey found the Ruddy Manuscript unsatisfactory she wrote a separate manuscript of her own (the "McCaughey Manuscript").  Humanix then parted ways with her and did not object to her publication of her manuscript as the E-Book even though she advised them in writing that she intended to publish her manuscript separately since they had no use for it.  Humanix cannot assert copyright ownership over *two* manuscripts where its contract with Dr. McCaughey (the "Agreement") explicitly called for the drafting, editing and publication of just one book – the Ruddy book.  Humanix admits that Dr. McCaughey provided a "redline" version of the Ruddy Manuscript on February 13, 2012 under the title, "ObamaCare Explained: What the Nation's New Health Care System Means for You," and that is the manuscript registered with the Copyright Office.  *See* Ex. B to Complaint.  Humanix does not dispute that

Dr. McCaughey's redline of the Ruddy Manuscript was later revised further and published by Humanix in October 2012 under a different title with Nick Tate listed as the author (the "Tate Book").[1]  Humanix cannot now claim ownership over the McCaughey Manuscript (entitled "Obamacare Decoded")[2] which later became the E-Book and the Regnery Book.  As the copyright registration demonstrates, that is ***not*** the manuscript for which Humanix owns any rights.  The copyright claims should be dismissed as a matter of law.[3]

Nor can Humanix claim rights in the E-Book or the Regnery Book by reason of an assignment of Dr. McCaughey's copyright.  Humanix has abandoned its legally unsupportable claim that their arrangement was a "work for hire" and instead exclusively focuses on the assignment in the Agreement between an unidentified "Supplier" and Humanix.  It is not disputed Dr. McCaughey is expressly defined as "Author" not "Supplier," and as Humanix "supplied" Dr. McCaughey with the Ruddy Manuscript to revise, the use of the undefined term "Supplier" (which could have been Dan Ruddy) in the assignment clause falls far short of the strict requirement in the Copyright Act that only an unequivocal writing demonstrates a transfer of copyright interests.  *See Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996).

Even if Humanix could somehow establish a copyright interest in the McCaughey

---

[1]  Nowhere does the Complaint allege that the E-Book and the Regnery Book infringe the copyright of the Tate Book by being substantially similar.

[2]  *See* Answer to Defendants/Counterclaimants/Third-Party Plaintiffs' Counterclaims ("Hx. Ans.") at ¶ 47 (admitting that Humanix received "Obamacare Decoded" on February 21, 2012); McCaughey Decl. Ex. H, Ruddy Aff. Ex. 12 (excerpts from McCaughey Manuscript).

[3]  *See Cordell v. The McGraw-Hill Cos.,* No. 12 Civ. 0637 (ALC), 2012 WL 5264844 (S.D.N.Y. Oct. 23, 2012) (dismissing plaintiff's claims for relief where barred by express terms of contract), *aff'd*, No. 12-4481-cv, 2013 WL 2096621 (2d Cir. May 16, 2013) (Summary Order).

Manuscript, the undisputed facts establish that Humanix is estopped from pursuing its claims. Humanix admits that for over nine months it remained silent about its alleged rights and even took affirmative steps leading Dr. McCaughey to believe that it did not have rights in her work. Humanix's claim that it did not "know" that she had published her manuscript elsewhere contradicts the undisputed facts and cannot be credited legally.  Under well-settled agency principles, the knowledge of employees (including those who worked with Dr. McCaughey in promoting her E-Book on the website operated by Newsmax Media, Inc. ("Newsmax")) is imputed to their employer, Chris Ruddy, President of both Newsmax and Humanix.

Humanix further fails to identify any material fact in dispute to defeat the defense of unclean hands as it admits that it used Dr. McCaughey's name and the title of her book in Google Ads until the counterclaims were filed in this case. The Agreement is also void *ab initio* or alternatively, recission is proper, because, as Humanix now admits, it did not disclose the material fact that it was already under contract with Dan Ruddy for the book.

Humanix concededly has rights in the Ruddy Manuscript and the Tate Book.  The undisputed facts, however, show it does not have rights in Dr. McCaughey's E-Book or the Regnery Book.  Accordingly, Dr. McCaughey and Regnery are entitled to judgment on the pleadings under Rule 12(c), or in the alternative, summary judgment under Rule 56.

<u>**ARGUMENT**</u>

**I.     DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS**

**A.     Humanix Has Not Alleged and Cannot Adequately Allege a Protectable Copyright Interest**

Humanix does not dispute that as the party seeking to enforce a copyright, it bears the burden of establishing that it is the owner of such a copyright. *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1371-72 (2d Cir. 1993).   It claims that it has met this burden

3

by producing a copyright registration certificate, which was attached as Exhibit B to the

Complaint.   The certificate purportedly registers the work entitled, "ObamaCare Explained:

What the Nation's New Health Care System Means for You."

   As the pleadings establish, however, that is the title of the work initially created by Dan

Ruddy, brother of Humanix's President, and edited by Dr. McCaughey, and *not* the separate

work by Dr. McCaughey entitled "ObamaCare Decoded" which was eventually published first as

the E-book and then in print by Regnery in January 2013.  As Humanix admits, Humanix

received a separate manuscript from Dr. McCaughey on February 21, 2012 that was entitled

"ObamaCare Decoded."  Hx. Ans. ¶ 47.[4]  Humanix further admits that "[o]n February 13, 2012,

Dr. McCaughey sent Humanix a redline of the Ruddy Manuscript," which was entitled

"ObamaCare Explained:  What the Nation's New Health Care System Means for You."  Opp. at

6; Grogan Aff. ¶ 26, Ex. 10.   The manuscripts are clearly different – a fact that Humanix does

not dispute and that is confirmed by a comparison of the exhibits.  *See* Grogan Aff. ¶¶ 26, 30,

Exs. 10, 12; McCaughey Decl. ¶¶ 30, 35, Exs. F, H.

   Given these admissions, the copyright registration certificate establishes, at most, rights

in the "Ruddy Manuscript," which bore the title of the name of the work on the certificate but not

in Dr. McCaughey's manuscript "Obamacare Decoded."[5]  Indeed, the Agreement references only

---

[4] Pleadings include not only the complaint and answer but the answer to counterclaims and
answer to third-party complaint, among others.  Fed. R. Civ. P. 7(a).

[5]  The Complaint incorrectly states that Dr. McCaughey delivered a manuscript on February 21,
2012 entitled "ObamaCare Explained:  What the Nation's New Health Care System Means for
You."  Compl. ¶ 9.  Given the admissions by Humanix described above which are supported by
the documentary evidence submitted by Humanix, the Court may disregard the incorrect
allegations in the Complaint for purposes of the motion for judgment on the pleadings. *Blue Tree
Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d

*continued on next page…*

one book – not multiple books.  *See* Ex. A to Complaint at 1 ("the Company desires the Author

to write, and the Author is willing to write *the book*").  As Humanix admits, it "wanted Dr.

McCaughey to edit the Ruddy Manuscript and be its public face," Hx. Ans. ¶ 15, and it emailed

Dr. McCaughey drafts of the Ruddy Manuscript for her to review and edit.  Hx. Ans. ¶¶ 20, 21.

Dr. McCaughey, in fact, reviewed and edited the Ruddy Manuscript, submitting a "redline" on

February 13, 2012.  Opp. at 6; Grogan Aff. ¶ 26.  Thus, even if the contract between Humanix

and Dr. McCaughey is valid, it only governed Dr. McCaughey's work on the Ruddy Manuscript.

Humanix has no rights in the separate manuscript that Dr. McCaughey later submitted under the

title "Obamacare Decoded" that became Dr. McCaughey's E-Book and the Regnery Book.

Accordingly, Humanix cannot state a claim for copyright infringement.

> **B.      There Is No Valid Assignment of the Copyright**

Even if Humanix can establish that the Agreement was intended to assign Dr.

McCaughey's copyright interest in both the revised version of the Ruddy Manuscript *and* her

"Obamacare Decoded" manuscript – which it cannot do – it must point to facts that establish that

there was a viable assignment of Dr. McCaughey's copyright interest.  Humanix now relies

exclusively on the provision in the Agreement involving an undefined "Supplier" and it concedes

that Dr. McCaughey is identified as "Author," not "Supplier."  Humanix asks the Court to

conclude that "Supplier" was meant to refer to Dr. McCaughey but it does not cite a single case

where a court held valid an assignment of a copyright interest where the transferor was not

clearly identified.  Nor has Humanix cited any authority where a party could recover for

---

*…continued from previous page*

Cir. 2004) (ignoring allegations "belied by the letters attached to the . . . complaint").
Alternatively, given that these facts are admitted by Humanix, the Court may treat the motion as
one for summary judgment under Rule 12(d) and enter judgment for Defendants.

infringement based on an assignment defective on its face.   On the contrary, courts have held that the "terms of any writing purporting to transfer copyright interests . . . *must be clear.*" *Papa's-June Music,* 921 F. Supp. at 1158.  The purported assignment here made by an unidentified party is not a clear writing as required under Section 204(a) of the Copyright Act.

The cases cited by Humanix relying on New York contract law principles involving ambiguities in contracts are not relevant to the assignment here which is governed by the federal Copyright Act.  As courts and commentators have noted, the express writing requirement under Section 204 of the Act is designed to protect authors such as Dr. McCaughey.  The provision is meant to "effectuate a congressional policy of protecting authors, even from themselves if need be."  Patry on Copyright § 5:106.  It "ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Effects Assocs. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).  In fact, a party can establish *prima facie* evidence of a copyright transfer by having a notarized certificate executed by the transferor, which is not present here.  17 U.S.C. § 204(b)(1).  These provisions demonstrate a strong and clear policy directive from Congress that the assignment of a copyright must be reduced to a clear and unambiguous writing which the Agreement does not provide.[6]

## C.   The Agreement Expressly Precludes Further Liability Against McCaughey After Termination

As noted in Defendants' motion, paragraph 9 of the Agreement expressly precludes any

---

[6] Likewise, the cases cited by Humanix regarding resolving ambiguities in favor of the party opposing a motion to dismiss are not applicable here where the Copyright Act requires that any "[a]mbiguities are to be construed in favor of the author's retaining his or her copyright." *Papa's-June Music,* 921 F. Supp. at 1159.

further "obligation or liability" of one party to the other after termination.  Humanix attempts to avoid this clear and express language by arguing that a provision that relieves a party from liability must express in "unequivocal terms the intention of the parties to do so."  Opp. at 14. The language in paragraph 9 of the Agreement can hardly be a more clear or express articulation of the parties' intentions.  It states that as a result of one (or more) of four enumerated events, "the Services Agreement shall terminate and thereafter neither party shall have any further obligation or liability to the other hereunder."  Agreement ¶ 9.  A straightforward application of this provision bars Humanix's claims in this action.[7]

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

### A.    Humanix Is Equitably Estopped From Pursuing Its Claims

Humanix admits the following facts that establish equitable estoppel as a matter of law:

1.  On February 21, 2012, Mr. Ruddy and Mr. Grogan received, on behalf of Humanix/Newsmax,[8] the latest draft of Dr. McCaughey's manuscript, entitled "Obamacare Decoded," a separate document from her "redline" of the Ruddy Manuscript.  Response to Stmt. of Material Facts [Docket No. 20] at ¶ 43.

2.  Humanix received Dr. McCaughey's letter of March 7, 2012 in which she stated: "I will publish my book elsewhere" and in capital letters, "PLEASE BE ON NOTICE THAT YOU HAVE NO CLAIM TO ANYTHING I HAVE WRITTEN, and I will make no claim against you."  *Id.* ¶ 65.

---

[7] Without a protectable copyright interest, the claims for breach of contract and tortious interference with contract also fail.  *See* Defs. Mem. of Law at 24 n.6.

[8] Newsmax owns Humanix, which was formed to acquire assets of another book publisher. Grogan Aff. ¶ 3.  Chris Ruddy is President and CEO of Newsmax and President of Humanix. Ruddy Aff. ¶ 1.  Dr. McCaughey was contacted by Newsmax in the fall of 2011 to write the book and she negotiated her contract with Newsmax.  *Id.* ¶¶ 14-15; Grogan Aff. ¶¶ 1, 4.  After Humanix was formed in January 2012, she signed the contract with Humanix.  Ruddy Aff. ¶¶ 11, 35.  The companies often refer to Humanix and Newsmax interchangeably.  *See, e.g.*, Ross Decl. Exs. C, D.

3. Humanix never responded to the March 7, 2012 letter or the statements that Dr. McCaughey made in the letter. *Id*. ¶ 67.

4. On or about March 26, 2012, Dr. McCaughey published her e-book entitled, "Decoding the Obama Health Law: What you Need to Know." *Id.* ¶ 69.

5. On March 30, 2012, Newsmax published on its website McCaughey's column entitled "All Americans Don't Use Healthcare" and identified her as the author of the recently published e-Book, "Decoding the Obama Health Law." *Id.* ¶ 73.

6. Newsmax published other columns by Dr. McCaughey throughout 2012, identifying her each time as author of the e-book, "Decoding the Obama Health Law." *Id*. ¶¶ 74-76.

7. In or around July 2012, Dr. McCaughey corresponded with Ken Chandler, editor of Newsmax's print magazine and inquired whether Newsmax was interested in publishing a special issue featuring her e-book, slightly condensed.  Mr. Chandler forwarded to Chris Ruddy Dr. McCaughey's email (which had the manuscript attached) before responding that Newsmax would have to pass. *Id.* ¶¶ 78-80; Ruddy Aff. ¶¶ 60-62.

8. Humanix did not raise any objection to the publication of the e-book until January 2013, after Regnery announced its intention to publish Dr. McCaughey's book.  Response to Stmt. of Material Facts [Docket No. 20] at ¶ 70.

Notwithstanding these admissions, Humanix contends that it did not *know* that Dr. McCaughey had published the e-book until July 2012 or that the e-book resembled the manuscript that she had submitted to Humanix.  As the undisputed facts set forth above establish, Humanix cannot support this contention factually.  Moreover, it is axiomatic that "knowledge acquired by an agent acting within the scope of its agency is imputed to the principal, even if the information was never actually communicated." *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),* 266 F.3d 112, 122-23 (2d Cir. 2001) (citing *Christopher S. v. Douglaston Club,* 275 A.D.2d 768, 769 (2d Dep't 2000)).  Thus, Mr. Ruddy's claim that he had no knowledge that Newsmax was identifying Dr. McCaughey as the author of the recently published book, "Decoding the Obama Health Law" (even though he was editor of all Newsmax publications and in charge of all of Newsmax's (and Humanix's) operations), is legally irrelevant.  The knowledge of the employees who included the references to Dr. McCaughey's e-book on the

Newsmax website – which is undisputed – is imputed to Mr. Ruddy and Humanix.

Furthermore, the cases Humanix cites concerning abandonment of copyright (Opp. at 21-22) are inapposite because they involved a party who indisputably had a copyright interest and the question was whether they did something to abandon that interest.  In contrast, Humanix is *claiming* to have a copyright but that very issue has been disputed from the outset (as evidenced by Dr. McCaughey's March 7, 2012 letter) and thus the question is whether Humanix acted in such a way that it was reasonable for Dr. McCaughey to believe that she was not doing anything wrong.  *See Decarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp 497, 509 (S.D.N.Y. 2001).  Humanix fails to cite any evidence that establishes that Dr. McCaughey should have known she was doing something wrong.  Humanix should be equitably estopped from bringing its claim.

### B.    Humanix Is Not Entitled To Injunctive Relief Because Of Unclean Hands

Humanix claims that it does not have unclean hands because its improper conduct is not "related" to its copyright claims but instead involves efforts to sell the Tate Book.  That book, however, is based on the Ruddy Manuscript which is the subject of the Agreement (and contains edits suggested by Dr. McCaughey).  *See* Ruddy Aff. ¶ 54 ("Ruddy Manuscript, as edited by Mr. Tate, was published on October 2, 2012 . . . (the "Tate Book").)   Humanix cut off royalties to Dr. McCaughey by terminating the Agreement, but it nevertheless used her edits in the Tate Book and her name and the Regnery Book's title in Google Ads.  That clearly establishes unclean hands arising from related conduct.  Its claim that the conduct is not a deceptive business practice is based entirely on trademark case law, which is inapplicable, and ignores the broad reach of the statute, which applies to any deceptive practice, provided it is "likely to mislead a reasonable consumer." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25 (1995).  Humanix also fails to address the unauthorized use of Dr. McCaughey's name (N.Y. Civ. Rights Law §§ 50, 51) which is further evidence of Humanix's unclean hands.

Although Humanix stopped using her name in its Google Ads after the counterclaims were filed (and thus acknowledging its wrongful conduct), the damage already had been done. The first two months in a book's lifecycle are often the most important and Humanix improperly diverted sales from the Regnery Book, directly harming Dr. McCaughey and Regnery.

### C.     The Agreement is Void *Ab Initio* or Recission is Proper

The motion should be granted for the alternative reason that Humanix now discloses for the first time that, more than a year before contracting with Dr. McCaughey, Newsmax contracted with Dan Ruddy to write the book on the Obama health care plan – a material fact not disclosed to Dr. McCaughey but now in hindsight one that explains Humanix's insistence that Dr. McCaughey use Dan Ruddy's work product. The fact that Chris Ruddy's company contracted with an individual who had no expertise, previous publications, or reputation in the health policy field to write a book on a 2,572 page health bill with the intent of marketing it as the work of another, known expert was destined to result in a misunderstanding. And Mr. Ruddy's failure to disclose to Dr. McCaughey the contract between the company and his brother led her to believe that what the company wanted was the best possible book – not the Ruddy book – no matter what. Had Dr. McCaughey known that material fact, she then would have known that she could not rewrite as much of the Ruddy Manuscript as necessary, as she believed at the time. *See* McCaughey Decl. ¶¶ 26-27. Accordingly, there was no meeting of the minds and she was fraudulently induced into entering the Agreement, which warrants recission.

### <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in their motion, Defendants respectfully request that the Court grant their motion and award Defendants attorneys' fees, costs, and any other relief as this Court deems just and proper.

10

Respectfully submitted,


 /s/ Mark I. Bailen
_____
Bruce W. Sanford
Mark I. Bailen
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC  20036
(202) 861-1500
(202) 861-1783 (Facsimile)
bsanford@bakerlaw.com
mbailen@bakerlaw.com

*Attorneys for Defendants Regnery*
*Publishing, Inc. and Betsy McCaughey*